UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RASHOD BROWN,

    Petitioner,

v.

THOMAS MACKIE,

    Respondent.

_____/

Case No. 14-cv-10243

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], GRANTING PARTIAL CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION FOR LEAVE TO APPEAL *IN FORMA PAUPERIS*

### I.  Introduction

Petitioner Rashod Brown was convicted in the Wayne Circuit Court of second-degree murder, MICH. COMP. LAWS § 750.317, two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750.227b. Petitioner was sentenced as a third-time habitual felony offender to concurrent controlling sentences of twenty to forty years for the murder and assault convictions, one to five years for the felon in possession conviction, and a consecutive five-year term for the firearm

conviction.

Petitioner raises three claims in the amended habeas petition: (1) his trial counsel was ineffective for failing to both conduct an adequate pretrial investigation and call two witnesses at trial; (2) his trial counsel was ineffective for failing to object to an aiding and abetting jury instruction; and (3) his appellate counsel was ineffective for failing to raise certain claims. The Court will deny all three claims.

The Court will grant Petitioner a certificate of appealability on the first claim, and will deny a certificate of appealability on the second and third claims. The Court will grant Brown permission to proceed on appeal *in forma pauperis*.

## II. Background

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from a shooting that took place in Detroit, Michigan. Around 5:30 p.m. on March 16, 2010, Darrell Young was working at a mechanic shop at the corner of Grand River Avenue and Martindale Road. Young was underneath a car when a group of approximately five men approached. The men were talking about the gold Chevy Malibu in front of the shop - Young's brother's car. Young testified that one of the group apparently believed that the car was his. Young began to emerge from underneath the car and one of the men hit him in the face. Young then retreated underneath the car. The men then walked away and down the block. Shortly thereafter, police officers arrived; they

2

talked to Young and to the group who had just left the shop. Defendant flagged down the officers from across the street and told them that the Malibu in question was his car and that it had been stolen the previous month. The police investigated and determined that the car did not belong to defendant and he became very aggravated. The Young brothers were later driving on Littlefield and, ultimately, defendant shot many times at both of them while they were in the vehicle. The bullets went "everywhere." One of the Young brothers was injured and a neighbor in the area, David Adams, was killed.

*People v. Brown*, No. 303099, 2012 WL 1890180, at *1 (Mich. Ct. App. May 22, 2012).

Following his conviction, Petitioner filed an appeal as of right. His appellate counsel raised the following claims:

> I. The trial court should have allowed a self-defense jury instruction when there was evidence that the appellant was fired upon by the complainants Derell and Darrell Young, and his assault with intent to murder convictions on insufficient evidence denied appellant his state and federal constitutional right to due process.
>
> II. The aiding and abetting jury instruction was improperly given to the jury when there was no evidence that a second shooter was aided and abetted by the appellant Rashod Brown and his murder in the second degree conviction on insufficient evidence denied appellant his state and federal constitutional right to due process.
>
> III. There was ineffective assistance of counsel when the attorney failed to request a self-defense jury instruction.
>
> IV. The evidence is insufficient to sustain defendant's conviction of murder in the second degree; alternatively, the verdict is against the great weight of the evidence; it would be a denial of due process and a

miscarriage of justice to allow the defendant's conviction to stand.

*See* Dkt. No. 1, pp. 2–3 (Pg. ID 2–3).

The Michigan Court of Appeals affirmed Petitioner's convictions. *Brown*, 2012 WL 1890180, at *1. Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same four claims as in the Michigan Court of Appeals and adding four claims:

> V. Due process requires a new trial on affirmation of two exculpatory witnesses who confirm that the defendant was with them at the time the crimes in question transpired.
>
> VI. Mr. Brown was denied his Sixth Amendment right to the effective assistance of counsel where counsel failed to present a defense by investigating and locating exculpatory witnesses for which he knew would corroborate defendant's account of events transpiring on the night in question.
>
> VII. Mr. Brown was denied effective assistance of trial counsel where counsel failed to object to the trial court's improper jury instruction based on a theory of aiding and abetting when there was no evidence that a second shooter was aided and abetted by Mr. Brown.
>
> VIII. Where appellate counsel was privy to arguments V, VI, [and] VII above, yet failed to investigate the existence of such witnesses or related constitutional claims, appellate counsel rendered ineffective assistance of counsel.

The Michigan Supreme Court denied the application. *People v. Brown*, 493 Mich. 891, 822 N.W.2d 233 (2012) (table).

Petitioner then filed a habeas petition in this Court on January 17, 2014. Dkt. No. 1. On February 24, 2014, the Court held the case in abeyance so that the Petitioner could exhaust his state court remedies on the additional claims. Dkt. No. 5.

Accordingly, Petitioner filed a motion for relief from judgment in the state trial court, raising the following claims:

> I. Due process requires a new trial based on the affirmation of two witnesses who confirm that the defendant was with them at the time of the crimes.
>
> II. Petitioner was denied the Sixth Amendment right to the effective assistance of counsel where counsel failed to present a defense by investigating and locating exculpatory witnesses despite counsel's knowledge that these witnesses would corroborate defendant's account of how events transpired on the night in question.
>
> III. Petitioner was denied the effective assistance of trial counsel because counsel failed to object to the trial court's jury instruction—based on a theory of aiding and abetting—because the jury instruction was improper as there was no evidence that a second shooter was aided and abetted by Petitioner.
>
> IV. Where appellate counsel was privy to arguments I, II and III above, yet failed to investigate the existence of such witnesses or related constitutional claims, and therefore, rendered ineffective assistance.

*See* Dkt. No. 11-15, pp. 3–4 (Pg. ID 910–11).

The trial court denied the motion for relief from judgment, finding that certain

claims lacked merit. Specifically, the trial court found that it could not review Petitioner's ineffective assistance of counsel claims pursuant to Michigan Court Rule 6.508(D)(2) because the claims were raised and rejected on direct appeal, and Petitioner had not demonstrated good cause and actual prejudice for the failure to raise new claims during his direct appeal as required by Michigan Court Rule 6.508(D)(3). Dkt. 11-17, at pp. 3–7 (Pg. ID 996–1000).

Petitioner's application for leave to appeal in the Michigan Court of Appeals was also unsuccessful. *People v. Brown*, No. 324474 (Mich. Ct. App. Dec. 29, 2014). The court reasoned that he "allege[d] grounds for relief that could have been raised previously and he ha[d] failed to establish good cause for failing to previously raise the issues, and ha[d] not established that good cause should be waived." *Id.* (citing MICH. CT. R. 6.508(D)(3)(a)). Brown filed an application for leave to appeal in the Michigan Supreme Court, which was denied under Michigan Court Rule 6.508(D). *People v. Brown*, 498 Mich. 947, 872 N.W.2d 436 (2015) (table).

Next, Petitioner filed a motion to reopen the case along with an amended petition. The amended petition raises three of the claims that Brown presented to the state courts in his post-conviction review proceeding. *See* Dkt. No. 6. Mackie filed a response, and the case is now ready for review.

## III. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is unavailable under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.' " *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (some citations omitted)).

"[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

7

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woods v. Etherton*, No. 15-723, 136 S. Ct. 1149, 2016 WL 1278478, at *3 (Apr. 4, 2016) (noting that habeas relief is precluded if a state court decision is "not beyond the realm of possibility [from what] a fairminded jurist could conclude."). The Supreme Court has explained that:

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

**IV. Discussion**

Petitioner contends that he was denied the effective assistance of counsel at trial and on appeal. To prevail on a claim of ineffective assistance of counsel, Brown "must show that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defense." *Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Deficient performance requires proof of "errors so serious that counsel was not functioning as

the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Prejudice necessitates a demonstration that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. And, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a petitioner fails to satisfy one of these requirements, a court need not address the other requirement. *Id.* at 697.

    A.    Trial Counsel's Failure to Conduct Pretrial Investigation and Call Certain Witnesses

Brown first argues that prior to trial he told his trial attorney that Jarel and George Scott could testify to the following: (1) they were with him at the time of the shooting; (2) Brown was not armed; and (3) Brown did not fire a gun at the Young brothers when the brothers were shooting at Brown and the Scotts. According to Brown, his counsel failed to investigate this information or call the Scotts as witnesses at trial.

In an affidavit, Jarel Scott attests that he was with the Petitioner on the evening in question. *See* Dkt. No. 6, pp. 30–31 (Pg. ID 57–58). Jarel explains that he heard a car coming down the street and told Brown that it was probably Brown's vehicle. *Id.* One of the two men in this car fired shots out of the car window. *Id.* According to Scott, he and Petitioner then ran into the house to escape the gunfire and at no time

9

during this incident did Petitioner possess a gun, let alone return fire. Jarel claims that he was never contacted by Petitioner's attorney. *Id.*

George Scott corroborates his brother's account in an affidavit, but George does not confirm whether he was contacted by defense counsel or anyone else regarding the case. *Id.* at pp. 32–33 (Pg. ID 58–59).

During Petitioner's post-conviction proceeding, the state courts heard two arguments involving the Scott brothers not testifying at trial. First, Petitioner asserted that the two affidavits constituted newly discovered evidence of innocence meriting a new trial as a matter of due process. Dkt. No. 11-15, at p. 8 (Pg. ID 915). Petitioner also argued that trial counsel was ineffective for not contacting the Scott brothers, not calling them as witnesses, or both. *Id.* at p. 13 (Pg. ID 920).

The trial court denied the due process claim, in part, because "the affidavits do not provide evidence of such a nature as to render a different result on retrial, as there was significant testimony proffered against the defendant, as well as other independent indicia and material evidence that was sufficient to prove the guilt of the defendant." Dkt. 11-17, at p. 5 (Pg. ID 998). Second, the trial court rejected the related ineffective assistance of counsel claim determining, incorrectly, that the claim had been raised on direct appeal. *Id.* at p. 3 (Pg. ID 996).

Respondent concedes that the trial court erred in concluding that the ineffective assistance of counsel claim had been raised and decided on direct appeal. Dkt. No. 10, at p. 34 n.3 (Pg. ID 102). Respondent argues that § 2254(d) deference still applies, however, because when the court rejected Petitioner's newly discovered evidence argument, it found that the affidavits of the uncalled witnesses did not "render a different result on retrial likely in light of the other significant testimony proffered against Brown." *Id.* at 33–34 (Pg. ID 101–02).

Indeed, a close similarity exists between *Strickland*'s "reasonable probability" prejudice standard and the "different result probable" prejudice standard employed by the trial court in this case. *See* Dkt. 11-17, at pp. 4–5 (Pg. ID 997–98). A habeas review court in these situations must apply a modified deferential standard under § 2254(d). *See Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007); *see also Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005). "This standard of review requires the court to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing unless the state court's decision is contrary to or an unreasonable application of federal law." *Maldonado*, 416 F.3d at 476 (citing *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005)); *see also Middlebrook v. Napel*, 698 F.3d 906, 908 (6th Cir. 2012).

When an attorney fails to investigate and present evidence, the controlling issue is whether (1) the evidence not offered "might well have influenced the jury's appraisal of [the petitioner's] culpability"; and (2) "the likelihood of a different result if the evidence had gone in is sufficient to undermine confidence in the outcome actually reached." *Rompilla v. Beard*, 545 U.S. 374, 393 (2005) (internal citations and quotation marks omitted).

Here, in light of the substantial evidence presented at trial indicating Petitioner's guilt and contradicting the Scott brothers' accounts, a fairminded jurist could reasonably find that Petitioner failed to demonstrate prejudice under *Strickland* because of any failure to call the Scott brothers as witnesses. The evidence included, for example, observations from the police officer who tried to determine the rightful owner of the vehicle in dispute earlier on the day of the shooting. Dkt. 11-10, at pp. 45–46 (Pg. ID 570–71). The officer said that the Petitioner was very agitated and appeared to threaten the victims by pointing his two fingers "like a gun." *Id*. Brown swore at this officer for not helping him recover what Brown (wrongly) believed to be his car, and said that "he was going to take care of it" himself, according to the officer. *Id*. at 47–48 (Pg. ID 572–73).

The shooting occurred later that day when the Young brothers repeatedly drove

the vehicle in question past the residence where Petitioner was located. Five separate, disinterested witnesses identified Brown as the person who walked into the street and fired an assault rifle toward the car after it had driven past the residence for the final time. Albena Mensai, the deceased victim's wife, testified that Petitioner shot the assault rifle at the car and in the direction of her house, where she was situated with the deceased victim. Dkt. 11-9, at pp. 78–81, 96 (Pg. ID 78–81, 96). A second witness, Aaron James, who at the time was on a different porch than Mensai, similarly identified Petitioner as the man who ran into the street and fired the assault rifle as he chased the car down the street. *Id.* at 147–49 (Pg. ID 147–49). Akili James likewise testified that Brown ran into the house when the car drove past, and then came out of the home holding a long gun and shot at the car. Dkt. 11-10, at pp. 16–17 (Pg. ID 16–17). Akili James may have seen the Petitioner at the same house on one occasion. *Id.* at 17–18 (Pg. ID 17–18).

Temperance Verdell, a fourth witness, identified Petitioner as the man with a long gun shooting at the car. *Id.* at 92–95 (Pg. ID 92–95). She singled out Brown as the shooter in a police line-up. *Id.* at 96–97 (Pg. ID 96–97). Finally, although the fifth witness, Paul Jones, did not specifically identify the Petitioner, Jones testified that Brown resembled the man who shot at the car. *Id.* at 79–81 (Pg. ID 79–81). All

five of these eyewitnesses contradicted the Scott brothers' accounts set out in their affidavits; specifically, the accounts that the occupants of the house merely fled inside or ducked for cover as the Young brothers drove past shooting.

In light of the substantial evidence of his guilt, a fairminded jurist could find that Petitioner was not prejudiced by the absence of the two defense witnesses. *See Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013) (finding habeas petitioner could not show prejudice through counsel's failure to call an alibi witness where two eyewitnesses positively identified petitioner as the perpetrator).

What is more, the Scotts do not explain why they did not come forward on their own initiative prior to trial. Where potential witnesses do not come forward in a timely manner, suspicions arise about the validity of their accounts; and, here the two defense witnesses did not come forward until more than a year after trial. *See Ashmon v. Davis*, 508 F. App'x 486, 488 (6th Cir. 2012). Nor do the affiants state that they were available or willing to testify at the time of trial. An affidavit must establish that an affiant would have been willing to testify at trial, because otherwise the trial court would never hear the relevant testimony. *See Sowell v. Anderson*, 663 F.3d 783, 802 (6th Cir. 2011) (Batchelder, C.J., concurring in part and dissenting in part).

Because a fairminded jurist could reasonably reject Petitioner's claim on the grounds that he has not established *Strickland* prejudice, Petitioner is not entitled to relief for trial counsel's failure to present the Scott brothers as witnesses. Furthermore, to the extent § 2254(d) deference does not apply to this claim, the Court finds that Petitioner has failed to demonstrate a reasonable probability that the result at trial would have been more favorable had his defense counsel called these two witnesses. Petitioner's first claim therefore does not provide a basis for granting habeas relief.

B. Trial Counsel's Failure to Object to Aiding and Abetting Jury Instruction

Brown next argues that the prosecutor did not present evidence demonstrating that the Petitioner was guilty under an aiding and abetting theory, and therefore, his trial counsel was ineffective for not objecting to the jury instruction on aiding and abetting.

On direct appeal Petitioner asserted the related claim that the trial court improperly instructed the jury on aiding and abetting. The Michigan Court of Appeals found that the instruction was proper:

> Defendant only takes issue with his second-degree murder conviction on an aiding and abetting theory, stating that there was no evidence that defendant aided and abetted a second shooter. However, a witness

15

testified that another man also had a gun on the front lawn, and that man was also firing a gun with defendant. Derell Young testified that it sounded as though there were two or more shooters. The sheer quantity of shell casings found also supports the theory of a second shooter. There was thus evidence to support that defendant was shooting in concert with another individual. David Adams's bullet wound was a "through and through" bullet wound; therefore, if the jury were to find that there were two shooters, there is a possibility that the bullet that killed Adams could have been from the second shooter. Therefore, there was evidence to support that defendant aided and abetted another in killing Adams with malice, and as such, no error, let alone plain error exists. Furthermore, there was ample evidence from which the jury could have found defendant guilty of second-degree murder irrespective of the presence of a second shooter, and indeed, two witnesses identified defendant as the only shooter. Therefore, the aiding and abetting instruction would not have affected the outcome of the lower court proceedings in any event.

*Brown*, 2012 WL 1890180, at *3.

A state court's determination that a jury instruction was proper under state law forecloses a claim that trial counsel was ineffective for failing to object to that instruction. *See Davie v. Mitchell*, 547 F.3d 297, 314–15 (6th Cir. 2008). As the Michigan Court of Appeals determined that an aiding and abetting instruction was proper, Petitioner's trial counsel was not ineffective for failing to object to the instruction. *See Campbell v. Coyle*, 260 F.3d 531, 557 (6th Cir. 2001).

Accordingly, this second claim fails as well.

## C. Appellate Counsel's Failure to Raise Claims I and II on Direct Appeal

Finally, Brown asserts that his appellate counsel was ineffective for not raising the above-discussed claims. The Court, as detailed above, has determined that these underlying claims lack merit. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). It is not ineffective assistance for appellate counsel to refrain from arguing meritless claims. *See Smith v. Murray*, 477 U.S. 527, 536 (1986). To the contrary, "th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id.* (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)); *see also Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit." (citing *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008))).

Therefore, Petitioner was not denied the effective assistance of appellate counsel; the claims he alleges counsel should have raised lack merit.

## V. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, "a circuit

17

justice or judge" must issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court has rejected Petitioner's habeas claims on the merits, and thus, to satisfy § 2253(c)(2), he must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

Reasonable jurists could debate whether Petitioner has established that his trial counsel was ineffective for failing to present the two uncalled defense witnesses at trial. The Court will therefore grant a certificate of appealability with respect to that claim.

The Court finds, however, that reasonable jurists would not debate whether Petitioner's other two claims merit relief. Accordingly, a certificate of appealability will not be granted for those claims. If Petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## VI. Conclusion

For the foregoing reasons, the Court (1) **DENIES** the Petition for Writ of Habeas Corpus, (2) **GRANTS** a certificate of appealability with respect to Petitioner's first claim, (3) **DENIES** a certificate of appealability with respect to Petitioner's second and third claims, and (4) **GRANTS** leave to appeal i*n forma pauperis*.

**IT IS SO ORDERED.**

Dated: January 23, 2018                    /s/Gershwin A. Drain
                                           GERSHWIN A. DRAIN
                                           United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 23, 2018, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk